# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| *In re: CaptureRX Data Breach Litigation*<br><br>This Document Relates To:<br><br>All Actions | Master File No. 5:21-CV-00523-OLG |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION, AND APPROVAL OF NOTICE PLAN

## <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

TABLE OF AUTHORITIES ................................................................................. *iii*

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL BACKGROUND ............................................................... 3

    A. Factual Background ................................................................................ 3

    B. Procedural Background........................................................................... 4

       1.  The Individual Cases................................................................... 4

       2.  The Transfer Litigation .............................................................. 8

       3.  Settlement Negotiations ............................................................. 9

III.  THE TERMS OF THE PROPOSED SETTLEMENT ................................ 10

    A. Certification of the Settlement Class and California Settlement Subclass .................. 10

    B. Relief for the Settlement Class and California Settlement Subclass ............................ 10

    C. Settlement Release ................................................................................ 11

    D. Attorneys' Fees, Costs, and Service Awards ........................................ 12

    E. Notice Program and Claims Administration........................................... 13

IV.   ARGUMENT............................................................................................... 15

    A. The Court Should Preliminarily Approve the Settlement............................................. 15

    B. Legal Standard ...................................................................................... 15

    C. The Proposed Settlement is Fair, Adequate, and Reasonable...................................... 18

       1.  Representative Plaintiffs and Settlement Class Counsel Have
          Adequately Represented the Settlement Class........................... 19

       2.  The Settlement was the Result of Arms-length Negotiations
          and Without Fraud or Collusion ................................................ 19

       3.  The Settlement is Favorable Given the Complexity, Expense,
          and Likely Duration of the Litigation ....................................... 21

4.   The State of Litigation and the Available Discovery ................................. 23

5.   The Settlement Terms Represent a Highly Favorable Compromise that
     Appropriately Balances the Merits of Plaintiffs' Claims and the
     Likelihood of Success with the Attendant Risks ...................................... 24

6.   Settlement Class Counsel and Representative Plaintiffs Believe
     that the Settlement is in the Settlement Class's Best Interests ................ 26

7.   The Settlement Treats Settlement Class Members Equitably
     Relative to Each Other ........................................................................... 27

D.   The Court Should Preliminarily Certify the Settlement Class ........................ 28

     1.   The Settlement Class Meets the Requirements of
          Rule 23(a) of the Federal Rules of Civil Procedure ............................. 28

          (a) *Numerosity* ................................................................................. 29

          (b) *Commonality* .............................................................................. 29

          (c) *Typicality* .................................................................................... 30

          (d) *Adequacy of Representation* ...................................................... 31

     2.   The Settlement Class Meets the Demands of Rule 23(b)(3) ................... 31

          (a) *Common Legal and Factual Questions Predominate in This Litigation* ........... 32

          (b) *A Class Action is the Superior Means to Adjudicate Plaintiffs' Claims* ........... 33

     3.   The Court Should Approve the Proposed Notice Program ..................... 34

V.   CONCLUSION ..................................................................................................... 36

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
  690 F.3d 698 (5th Cir. 2012) ................................................................................. 32

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852,
  2019 U.S. Dist. LEXIS 17652, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019).......................... 17

*Amchem Prods. v. Windsor*,
  521 U.S. 591, 620 (1997)............................................................................... 28, 32

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)............................................................................................... 32

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ........................................................................ 21

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ................................................................... 21, 23, 24

*Carrera Aguallo v. Kemper Corp.*,
  No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) ............................................... 27

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ..................................................................... 18, 21

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
  829 F.3d 370 (5th Cir. 2016) ............................................................................ 32

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 292 (W.D. Tex. 2007) .............................................................. 24, 25, 27

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156, 173 (1974)............................................................................. 13, 34

*Fehlen v. Accellion, Inc.*,
  No. 21-cv-01353 (N.D. Cal.) ........................................................................... 22

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
  446 U.S. 318, 330 (1980)................................................................................. 29

*Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB,
  2019 U.S. Dist. LEXIS 17029, 2019 WL 427331 (M.D. La. Feb. 4, 2019)................... 17, 18

*In re Banner Health Data Breach Litigation*,
  No. 2:16-cv-02696-PHX (D. Az.)................................................................. 23

iii

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997)...................................................................... 21, 25

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981) .................................................................................. 24

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ...................................................................... 17, 29, 31

*In re Dep't of Veterans Affs. (VA) Data Theft Litig.*,
   No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) ......................... 27

*In re Google Buzz Priv. Litig.*,
   No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011)......................... 27

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d (S.D. Tex. 2012) ..................................................................... passim

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
   910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), aff'd sub nom .................................. 17

*In re Talbert*,
   347 B.R. 804, 808-809 (E.D. La. 2005)................................................................... 29

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........... 30, 33

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) ................................................................................... 30

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ................................................................................... 31

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) .............................................................. passim

*Kostka v. Dickey's Barbeque Restaurants, Inc.*,
   No. 20-cv-3424 (N.D. Tex.)...................................................................................... 22

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir.2007) .................................................................................... 30

*Liger v. New Orleans Hornets NBA Ltd. P'ship*,
   No. 05-1969, 2009 U.S. Dist. LEXIS 85733, 2009 WL 2856246 (E.D. La. Aug. 28, 2009)... 21

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ................................................................................... 29

*Manchaca v. Chater*,
   927 F. Supp. 962, 967 (E.D. Tex. 1996) ............................................................... 19

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) .................................................................... 29, 34

*Odonnell v. Harris County*,
   No. H-16-1414, 2019 U.S. Dist. LEXIS 151159 (S.D. Tex. Sep. 5, 2019) ................. 17, 28, 35

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ............................................................................ 24

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ........................................................................ 18, 27

*Purdie v. Ace Cash Express, Inc.*,
   No. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ....................... 17

*Reed v. General Motors Corp.*,
   703 F.2d 170, 172 (5th Cir. 1983) ................................................................. passim

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ...................................................................... 24

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ........................................................................................... 31

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ...................................................................... 27

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632, 639 n.11 (5th Cir. 2012) ............................................................. 17

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ......................................................................... 31

*Wal-Mart Stores, Inc. v. Dukes, et al*,
   564 U.S. 338 (2011) ........................................................................................... 29

## **STATUTES**

28 U.S.C. § 1407 .................................................................................................... 8

California Confidentiality of Medical Information Act ("CMIA"),
   Cal. Civ. Code §§ 56, *et seq*. ..................................................................... 4, 6, 7

California Consumer Records Act ("CCRA"),
   Cal. Civ. Code §§ 1798.82, *et seq*. .................................................................. 6

California Unfair Competition Law ("UCL"),
   Cal. Bus. & Prof. Code §§ 17200, *et seq.* ........................................................ 4, 6, 7

California's Information Practices Act of 1977,
   Cal. Civ. Code §§ 1798, *et seq* ........................................................................ 4, 6, 7

Missouri Merchandising Practices Act, Mo. Rev. State. §407.010 et seq. .................................... 7

## **OTHER AUTHORITIES**

1 *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992) ............................................... 29

2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ................................................. 16

*Manual for Complex Litigation*, § 21.632 ............................................................... 28

*Newberg on Class Actions* § 13:10 (5th ed.) ........................................................... 15

Treasury Regulation § 1.46B-1, *et seq.* ............................................................... 15

## **RULES**

Fed. R. Civ. P. 23 ................................................................................ 17, 18, 29

Fed. R. Civ. P. 23(a) ............................................................................. 29

Fed. R. Civ. P. 23(a)(1) .......................................................................... 29

Fed. R. Civ. P. 23(a)(3) .......................................................................... 30

Fed. R. Civ. P. 23(a)(4) .......................................................................... 31

Fed. R. Civ. P. 23(b)(3) .......................................................................... 32, 33

Fed. R. Civ. P. 23(b)(3)(B) ....................................................................... 34

Fed. R. Civ. P. 23(b)(3)(C) ....................................................................... 34

Fed. R. Civ. P. 23(c) ............................................................................. 13

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 13, 15, 34, 35

Fed. R. Civ. P. 23(e) ............................................................................. 13, 15, 28, 34

Fed. R. Civ. P. 23(e)(1) .......................................................................... 13

Fed. R. Civ. P. 23(e)(2) .......................................................................... 15, 16, 17, 28

Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ....................................... 17

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................ 19

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................... 19, 21

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................................... 23, 26

Fed. R. Civ. P. 23(e)(2)(D) .............................................................................................. 27

Fed. R. Civ. P. 23(e)(3) ................................................................................................... 16

I. **INTRODUCTION**

Plaintiffs Daisy Trujillo, Mark Vereen, Michelle Rodgers, Echoe Camacho, on behalf of herself and her minor child, T.C., and Angelica Mendoza, on behalf of themselves and all other persons similarly situated ("Plaintiffs"), with the consent of Defendants NEC Networks, LLC d/b/a/ CaptureRx ("CaptureRx") and Rite Aid Hdqtrs. Corp. ("Rite Aid") (collectively, "Defendants"), respectfully request entry of an order granting preliminary approval of the class action settlement (the "Settlement") set forth in the parties' Class Settlement Agreement and Release (the "Settlement Agreement"), certifying a class, appointing Settlement Class Counsel, appointing Plaintiffs as Class Representatives for settlement purposes, providing for issuance of Notice to the Settlement Class, and scheduling a date for the Final Approval Hearing.

Plaintiffs' claims arise from an alleged cyberattack on CaptureRx's computer systems that took place in or about February 2021, and allegedly compromised the personally identifiable information ("PII") and protected health information ("PHI") of approximately 2,420,141 individuals who had provided their PII to CaptureRx's customers in order to receive pharmacy prescription services (the "Data Incident").

The proposed Settlement is the result of arm's-length negotiations with the assistance of the Hon. Wayne Andersen (Ret.) of JAMS and provides substantial and meaningful relief to the Settlement Class. Notably, all Plaintiffs who filed claims in connection with the Data Incident (including those Plaintiffs who are not parties to this litigation and who filed in other venues) were invited to participate in the mediation, and the vast majority of Plaintiffs did, in fact, participate.

More importantly, this Settlement has the support of at least 7 of the 10 cases filed arising out of the Data Incident.[1] And, there is no known opposition to the Settlement at this time.

If approved, the Settlement will create a $4,750,000 Settlement Fund and resolve all claims that Plaintiffs and the Settlement Class have against the Released Parties[2] arising from the Data Incident. Settlement Class Members who submit a valid claim will be entitled to a cash payment ($25.00 and, for California residents, an additional $75.00). The proposed Settlement is fair and well within the range of preliminary approval. See the Declaration of Gary M. Klinger attached hereto as **Exhibit 2** ("Klinger Decl."). By settling now, the Settlement Class can take advantage of remedies that would be unavailable or worth substantially less by the time of a litigated final judgment. See the Declaration of Chris Hotchkiss, attached hereto as **Exhibit 3**.  And that, of course, assumes Plaintiffs could certify their claims for class treatment and prevail on the merits

---

[1] Those cases include *Trujillo v. NEC Networks, LLC*, No. 5:21-CV-00523-OLG (W.D. Tex.), *Vereen v. NEC Networks, LLC, et al.*, No. 5:21-CV-00536-OLG (W.D. Tex.), *Rodgers v. NEC Networks LLC,* No. 5:21-cv-00692-OLG-HJB (W.D. Tex.), *Biddle v. The University of Pittsburgh Medical Center, et al.*, No. 2:21-cv-00815-RJC (W.D. Pa.), *Camacho, et al. v. NEC Networks, LLC, et al.,* No. 5:21-cv-00979-OLG (W.D. Tex.), *Mendoza v. NEC Networks, LLC, et al.*, No. 5:21-cv-01232-OLG (W.D. Tex.), *D.W., et al. v. NEC Networks, LLC, et al.*, No. 4:21-cv-00363-SRB (W.D. Mo.).

[2] Capitalized terms shall have the same meaning as those assigned to them in the Class Settlement Agreement and Release (the "Settlement Agreement"), which is attached hereto as **Exhibit 1**. In the Settlement Agreement, Released Parties means CaptureRx and any of its customers who Class Members have, or potentially have, claims against related to the Data Incident which includes, but is not limited to the following persons or entities: Walmart Inc.; Wal-Mart Stores, Inc.; Wal-Mart Stores East, LP; Midtown Health Center, Inc.; Rite Aid Hdqtrs. Corp.; its parent Rite Aid Corporation; Community Health Centers of the Central Coast, Inc. ("CHCC"); The University of Pittsburgh Medical Center; Camden-on-Gauley Medical Center, Inc.; Davis Health System, Inc.; Davis Memorial Hospital; and Broaddus Hospital.

with respect to such claims, neither of which is certain.[3]   Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II.   **PROCEDURAL BACKGROUND**

### A.   **Factual Background**

CaptureRx is a specialty pharmacy benefits manager that provides prescription claims processing, patient assistance program administration, and public health service 340B drug program administration. *See* Consolidated Class Action Compl. ("Compl."), ¶ 2, ECF No. 17.[4] CaptureRx provides these services for pharmacies and healthcare providers across the United States. *Id.* Plaintiffs provided their PII and PHI to Defendants in order to receive prescription services. *Id.*, ¶¶ 30-31. On or about February 6, 2021, unauthorized actors gained access to CaptureRx's computer systems and accessed and acquired certain files containing the PII and PHI of the patients of CaptureRx's customers, including the PII and PHI of Plaintiffs. *Id.*, ¶¶ 4, 23-24. CaptureRx discovered the Data Incident on February 11, 2021; determined by February 19, 2021 that certain files were accessed during the Data Incident; and determined by March 19, 2021 that these files contained the PII and PHI—specifically, first names, last names, dates of birth, and prescription information—of certain patients of CaptureRx's customers. *Id.*, ¶¶ 4, 23-24, Ex. A. CaptureRx notified its affected customers of the Data Incident between March 30, 2021 and April

---

[3] As to the non-CaptureRx defendants, Plaintiffs face also face risks if the litigation proceeds on the merits because those defendants contend Plaintiffs would need to prove those defendants are liable based on their decision to utilize CaptureRx's services.

[4] All cites to "Compl." are to the Consolidated Class Action Complaint filed by Plaintiffs Daisy Trujillo and Mark Vereen in *In Re: CaptureRx Data Breach Litigation*, Case No. 5:21-cv-00523-OLG (W.D. Tex.). Materially similar allegations are contained in the Complaints filed by Plaintiffs Rodgers, Camacho, Burch, and Mendoza, whose cases were consolidated into the above-captioned action. Unless otherwise specified, all cites to the record correspond with the docket entries in *In Re: CaptureRx Data Breach Litigation*, Case No. 5:21-cv-00523-OLG (W.D. Tex.).

7, 2021. *Id.* It was not until May 5, 2021 that CaptureRx began notifying the patients whose PII and PHI had been compromised, including Plaintiffs. *Id.*

Plaintiffs allege Defendants are responsible for the Data Incident because they failed to implement reasonable data/information security procedures and practices; warn Plaintiffs and Settlement Class Members of their data/inadequate information security practices; and avoid sharing the PII and PHI of Plaintiffs and Settlement Class Members without adequate safeguards. *Id.*, ¶¶ 8, 29, 34-53. Plaintiffs allege that, as a result of these failures, they and Settlement Class Members have suffered injuries, including: (i) the loss or diminishment in value of their PII and PHI; (ii) out-of-pocket mitigation expenses; (iii) time spent on mitigation efforts; and (iv) ongoing risk of identity theft and financial fraud. *Id.*, ¶ 9.

     **B.**    **Procedural Background**

          1.    The Individual Cases

On June 2, 2021, Plaintiff Daisy Trujillo filed a Class Action Complaint against Defendants CaptureRx and Rite Aid[5] in this Court, alleging causes of action for: (i) negligence; (ii) breach of implied contract; (iii) invasion of privacy; (iv) breach of confidence; (v) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (vi) violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq.*; and (vii) violation of California's Information Practices Act of 1977, Cal. Civ. Code §§ 1798, *et seq.*[6] *See* ECF No. 1.

---

[5] The Trujillo Complaint named Rite Aid Corporation as a defendant; however, on July 20, 2021, the Court granted the parties' stipulation to substitute Defendant Rite Aid Hdqtrs. Corp. for Rite Aid Corporation, *See* ECF No. 16.

[6] The Complaint asserted the common law claims on behalf of a nationwide class, and the California statutory claims on behalf of a California subclass.

On June 4, 2021, Plaintiff Mark Vereen filed a Class Action Complaint against Defendants CaptureRx and Midtown Health Center, Inc. ("Midtown"), also in this Court, alleging the same causes of action as the Trujillo Complaint. *See* Compl., ECF No. 1, *Vereen v. NEC Networks, LLC, et al.*, No. 5:21-CV-00536-OLG (W.D. Tex.). On June 30, 2021, Plaintiffs Trujillo and Vereen moved to consolidate their two actions, as well as any subsequently filed or transferred related actions, before this Court. *See* ECF No. 11. This Court thereafter consolidated the cases, ECF No. 13, and appointed Gary Klinger of Mason Lietz & Klinger LLP and M. Anderson Berry of the Arnold Law Firm as Interim Lead Counsel and Joe Kendall of Kendall Law Group, PLLC as Interim Local Counsel. ECF No. 14. Plaintiffs Trujillo and Vereen thereafter, on August 13, 2021, filed a Consolidated Class Action Complaint against Defendants CaptureRx and Rite Aid,[7] alleging causes of action for: (i) negligence; (ii) breach of implied contract; (iii) invasion of privacy; (iv) breach of confidence; (v) violation of the California UCL; and (vi) unjust enrichment.[8]

Plaintiff Michelle Rodgers filed a Class Action Complaint against CaptureRx on July 21, 2021, also in this Court, alleging causes of action for: (i) negligence; (ii) negligence *per se*; and (iii) declaratory judgment, on behalf of a nationwide class. *See* Compl., ECF No. 1, *Rodgers v. NEC Networks LLC*, No. 5:21-cv-00692-OLG-HJB (W.D. Tex.). This Court thereafter ordered that the *Rodgers* case be consolidated with the *Trujillo* and *Vereen* matters in *In Re: CaptureRx Data Breach Litigation*, Case No. 5:21-cv-00523-OLG (W.D. Tex.). *See* ECF No. 24.

---

[7] Midtown was not named as a defendant in the Consolidated Class Action Complaint.

[8] As with the Trujillo Complaint, the Consolidated Class Action Complaint brought the common law claims on behalf of a nationwide class, and the California statutory claims on behalf of a California subclass.

Plaintiff Esther Burch filed a Class Action Complaint against Rite Aid on October 20, 2021, in the Los Angeles Superior Court, alleging causes of action for: (i) violation of the California CMIA; (ii) violation of the California UCL; and (iii) violation of the California Consumer Records Act ("CCRA"), Cal. Civ. Code §§ 1798.82, *et seq.*, on behalf of a California class. *See* Compl., ECF No. 1-2, *Burch v. Rite Aid Corp.*, No: 5:21-cv-01102-OLG (W.D. Tex.). Rite Aid removed the case to the Central District of California on November 1, 2021, and the parties stipulated to a transfer to the Western District of Texas, which occurred on November 10, 2021. *Id.* This Court thereafter ordered that the *Burch* case consolidated with the *Trujillo*, *Vereen*, and *Rodgers* matters in *In Re: CaptureRx Data Breach Litigation*, Case No. 5:21-cv-00523-OLG (W.D. Tex.). *See* ECF No. 29.

Plaintiff Echoe Camacho, on behalf of herself and her minor child, T.C., filed a Class Action Complaint against CaptureRx and Rite Aid on June 4, 2021, in the Eastern District of California, alleging causes of action for: (i) negligence; (ii) negligence *per se*; (iii) declaratory judgment; (iv) breach of confidence; (v) breach of express contract; (vi) breach of implied contract; (vii) intrusion upon seclusion; (viii) violation of California's UCL; (ix) violation of the CCRA; and (x) violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100, *et seq.*[9] *See* Compl., ECF No. 1, *Camacho, et al. v. NEC Networks, LLC, et al.*, No. 5:21-cv-00979-OLG (W.D. Tex.). The parties stipulated to a transfer to the Western District of Texas, which occurred on October 13, 2021. *Id.* This Court thereafter ordered that the *Camacho* case be consolidated with the *Trujillo*, *Vereen*, *Rodgers*, and *Burch* matters in *In Re: CaptureRx Data Breach Litigation*, Case No. 5:21-cv-00523-OLG (W.D. Tex.). *See* ECF No. 31.

---

[9] Camacho brought her common law claims and the UCL claim on behalf of a nationwide class and a nationwide minor subclass; she brought the CCRA and CCPA claims on behalf of a California subclass and a California minor subclass.

Plaintiff Angelica Mendoza brought a Class Action Complaint against CaptureRx, Rite Aid, and CHCC on August 10, 2021 in the Northern District of California, alleging causes of action for: (i) negligence; (ii) invasion of privacy; (iii) breach of confidence; (iv) violation of California's Information Practices Act of 1977; (v) violation of the CMIA; (vi) breach of implied contract; (vii) breach of the implied covenant of good faith and fair dealing; (viii) violation of the California UCL; and (ix) unjust enrichment.[10] *See* Compl., ECF No. 1, *Mendoza v. NEC Networks, LLC, et al.*, No. 5:21-cv-01232-OLG (W.D. Tex.). The parties stipulated to a transfer to the Western District of Texas, which occurred on December 14, 2021. *Id.* This Court thereafter ordered that the *Mendoza* case be consolidated with the *Trujillo*, *Vereen*, *Rodgers*, *Burch*, and *Camacho* matters in *In Re: CaptureRx Data Breach Litigation*, Case No. 5:21-cv-00523-OLG (W.D. Tex.). *See* ECF No. 34.

Plaintiff D.W. brought a Class Action Complaint against CaptureRx, and Walmart, Inc. on May 25, 2021 in the Western District of Missouri, alleging causes of action for (i) breach of implied contract; (ii) negligence; (iii) invasion of privacy by public disclosure of private facts; (iv) breach of fiduciary duty of confidentiality; (v) violations of the Missouri Merchandising Practices Act, Mo. Rev. State. §407.010 et seq.; (vi) negligent training and supervision; and, (vii) negligence *per se*. *See Compl.*, ECF No. 1, *D.W., et al. v. NEC Networks, LLC, et al.*, No. 4:21-cv-00363-SRB (W.D. Mo.). The case filed in the Western District of Missouri is stayed pending resolution of the claims from the Texas Court.

Plaintiff Mark Biddle brought a Class Action Complaint against CaptureRx, the University of Pittsburgh Medical Center, and Charles J. Hilton, P.C. Attorney at Law on June 23, 2021 in the

---

[10] Mendoza brought her common law claims on behalf of a nationwide class and her California statutory claims on behalf of a California subclass.

Western District of Pennsylvania, alleging causes of action for negligence, negligence *per se*, invasion of privacy, violation of the Pennsylvania Breach of Personal Information Notification Act, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and unjust enrichment.  *See Compl.*, ECF No. 2, *Biddle v. The University of Pittsburgh Medical Center, et al.*, No. 2:21-cv-00815-RJC (W.D. Pa.).  On December 9, 2021, Plaintiff Biddle filed a notice of settlement. *See* ECF No. 29.

2.    The Transfer Litigation

During the pendency of the above-identified actions, a plaintiff in a related case in the Western District of Missouri[11] filed a motion under 28 U.S.C. § 1407 to centralize all litigation arising from the Data Incident in the Western District of Missouri. *See* Order Den. Transfer, ECF No. 73, *In Re: NEC Networks, LLC d/b/a CaptureRx Customer Data Security Breach Litig.*, MDL No. 3018 (JPML Dec. 8, 2021). Certain plaintiffs opposed the request, or supported centralization in venues other than the Western District of Missouri, and certain defendants advocated for transfer to various Districts. *Id.* The Judicial Panel on Multidistrict Litigation denied the motion to centralize the litigation, in large part because of the Settlement reached in the instant consolidated actions, holding that "[c]entralization at this time is premature and could delay a class-wide settlement with little or no benefit to the parties and putative class members." *Id.* at 2. The Settlement that is the subject of this Motion for Preliminary Approval will resolve all of the claims in those related cases now pending in other Districts. Klinger Decl., ¶37.[12]

---

[11] *D.W. v. Walmart Inc., et al.*, No. 4:21-cv-00363-SRB (W.D. Mo.).

[12] In addition to the *D.W.* case pending in the Western District of Missouri, Plaintiffs are aware of the following related actions pending in other federal district courts: *Bays v. Walmart, Inc., et al.*, 3:21-cv-460-RC (S.D. W. Va.); *Biddle v. The University of Pittsburgh Medical Center, et al.*, No. 2:21-cv-00815-RJC (W.D. Pa.); *Tignor v. Camden-on-Gauley Medical Center, Inc., et al.*, No. 2:21-cv-00018-TSK (N.D. W. Va.); and *Newman v. Davis Health System, Inc., et al.*, No. 2:21-

3.      Settlement Negotiations

Before filing their respective Complaints, Plaintiffs' counsel investigated the potential claims against Defendants, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers. Klinger Decl., ¶39. Before Defendants could respond to the Complaint, the centralization litigation discussed above was initiated, and counsel devoted resources to litigating the consolidation motion before the JPML while at the same time arranging a mediation session with CaptureRx. Klinger Decl., ¶40. The parties participated in a global mediation—where all counsel were invited to attend—on November 3, 2021, with the Hon. Wayne Andersen, a retired federal judge and experienced class action mediator, to explore whether a negotiated resolution was possible. *See* Klinger Decl., ¶41. In advance of the mediation, CaptureRx provided settlement discovery to Plaintiffs' counsel regarding the scope of the Data Incident, the number of class members, remedial efforts and the limited funds it has to resolve the many claims asserted against it. Klinger Decl., ¶42. The parties also exchanged lengthy mediation briefs in advance of the mediation. Klinger Decl., ¶43. The litigation did not resolve at the mediation session. However, Judge Andersen and counsel engaged in numerous follow-up telephonic efforts to resolve this matter, which ultimately resulted in the material terms of the Settlement. Klinger Decl., ¶44. The parties thereafter spent significant time negotiating the specific terms and language of the Settlement Agreement through numerous phone calls and email exchanges. Klinger Decl., ¶45. The Settlement Agreement is now before this Court for preliminary approval.

---

cv-00019-TSK (N.D. W. Va.).  Plaintiffs in these related actions are members of the proposed Settlement Class.

III.   **THE TERMS OF THE PROPOSED SETTLEMENT**

The Settlement fully and finally resolves the claims and disputes between the Settling Parties. The Settlement Agreement defines the Settlement Class, describes the Settling Parties' agreed-upon exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members. The following summarizes the terms of the Settlement Agreement.

A.   **Certification of the Settlement Class and California Settlement Subclass**

Under the Settlement Agreement, the Settling Parties agree to certification of a nationwide Settlement Class for settlement purposes as follows: "[A]ll natural persons residing in the United States whose Personal Information was exposed to an unauthorized party as a result of the Data Incident."[13] ¶ 1.32.[14] The "California Settlement Subclass" means all natural persons residing in the State of California at the time of the Data Incident whose Personal Information (a) Defendant stored and/or shared in its electronic files and (b) was exposed to an unauthorized party as a result of the data breach announced between March 30 and April 7, 2021 and that occurred on February 6, 2021.[15] ¶ 1.6.

B.   **Relief for the Settlement Class and California Settlement Subclass**

The Settlement Agreement provides significant monetary relief. CaptureRx will establish a Settlement Fund of $4,750,000.00. The Settlement Fund shall be the sole and exclusive source

---

[13] Excluded from the Settlement Class is any judge presiding over this matter and any members of their first-degree relatives, judicial staff, the officers and directors of CaptureRx and its customers who were impacted by the Data Incident, Settlement Class Counsel and their first-degree relatives, and persons who timely and validly request exclusion from the Settlement Class.

[14] References to "¶ __" refer to the corresponding paragraph or subparagraph of the Settlement Agreement.

[15] The California Settlement Subclass has the same exclusions as the nationwide Settlement Class.

of all Settlement Costs and Award payments to Settlement Class Members, Administrative Costs, Service Awards, and Attorneys' Fees and Expenses. ¶ 1.36.

Each Settlement Class Member who files a valid claim will be eligible for one cash payment. Every Settlement Class Member who attests that he or she was impacted by the Data Incident is eligible to receive Twenty-Five Dollars ($25.00). ¶ 2.4. In addition to the cash payment, California Settlement Subclass Members will also be eligible for an additional benefit of Seventy-Five Dollars ($75.00). ¶ 2.5. Each Class and Subclass member must attest that he or she was impacted by the Data Incident, and was a California resident at the time of the Data Incident, respectively. The Settlement Agreement provides for a pro rata increase or a pro rata reduction if the total dollar value of all Approved Claims is less than or exceeds the amount remaining in the Settlement Fund after the Claims Deadline has passed and after the Attorneys' Fees and Expenses Award, the Service Award, and Claims Administration costs have been paid in full out of the Settlement Fund. ¶ 2.6. Any remaining funds after distribution will be paid to a *cy pres* recipient to be agreed upon by the parties (and subject to court approval). ¶ 2.6.

CaptureRx will further develop, implement, and maintain a comprehensive information security program that is reasonably designed to protect the security, integrity, and confidentiality of Personal Information that CaptureRx collects or obtains from Patients (collectively, the "ISP"). The CaptureRx ISP shall be written and shall contain administrative, technical, and physical safeguards appropriate to: (i) the size and complexity of CaptureRx's operations; (ii) the nature and scope of CaptureRx's activities; and (iii) the sensitivity of the Personal Information that CaptureRx maintains. ¶ 2.7.

**C.** **Settlement Release**

In consideration for the monetary, injunctive, and other relief afforded in the Settlement Agreement, upon the Effective Date, each Settlement Class Member, including Representative

Plaintiffs, whether or not they have received an Award, will be deemed to have forever fully, finally, completely, and unconditionally released, discharged, and acquitted CaptureRx and the Released Parties from any and all of the Released Claims, and will be deemed to have also released Unknown Claims.[16] ¶ 8.1

Upon entry of the Final Approval Order, each Settlement Class Member, including Representative Plaintiffs, shall be barred from initiating, asserting, or prosecuting against CaptureRx and any Released Parties any claims that are released by operation of the Class Settlement Agreement and the Final Approval Order. ¶ 8.2.

### D. Attorneys' Fees, Costs, and Service Awards

Within the applicable time period set forth by the Court, Settlement Class Counsel will file a motion seeking reasonable attorneys' fees in an amount not to exceed one third (or $1,583,333.33) of the Settlement Fund. ¶ 9.1. Settlement Class Counsel and other Representative Plaintiffs' Counsel will seek their reasonable costs and expenses from the Settlement Fund (not to exceed $30,000.00). ¶ 9.1. Settlement Class Counsel will also request approval by the Court of a Service Award for each of the five Representative Plaintiffs in the amount of Two Thousand Dollars ($2,000.00), for a total of Ten Thousand Dollars ($10,000), to be paid solely from the Settlement Fund. ¶ 9.2. CaptureRx shall not be liable for any additional attorneys' fees and expenses of Settlement Class Counsel or the Representative Plaintiffs in the Litigation. ¶ 9.5.[17]

---

[16] Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than the participation in the Settlement Agreement) in which any of the Released Claims or Unknown Claims are asserted. ¶ 8.1.

[17] Moreover, "[n]o order of the Court or modification or reversal or appeal of any order of the Court concerning the amounts of the Attorneys' Fees and Expenses Award or the Service Award

### E.   <u>Notice Program and Claims Administration</u>

Pursuant to Federal Rules of Civil Procedure, Rule 23(e) ("Rule 23(e)"), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Accordingly, the Settlement Agreement states that "[t]he Notice Program shall be subject to approval by the Court as meeting the requirements of Rule 23(c) of the Federal Rules of Civil Procedure" (¶ 4.3), and thus Plaintiffs request that the Court approve the terms summarized herein, and as fully detailed in the Settlement Agreement.

The Settlement Agreement proposes a notice and administration process that best ensures that all Settlement Class Members will be informed of the pending settlement and, if it is approved, will receive their payment for Approved Claims electronically or, if a Settlement Class Member cannot receive funds electronically, award checks shall be sent by U.S.P.S. mail. ¶ 7.7.

CaptureRx will provide the Claims Administrator with a list of Settlement Class Members in such format as requested by the Claims Administrator which will include, to the extent available, the name and physical mailing address of each Settlement Class Member, and, if known, their respective email addresses. ¶ 4.1. The Claims Administrator will send a Summary Notice on a postcard via First Class U.S. Mail, postage pre-paid, to Settlement Class Members, and will undertake reasonable efforts to confirm the address and to resend notice, for any Settlement Class Members for which the Claims Administrator receives returned mail from the U.S. Postal Service

---

hereunder shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Class Settlement Agreement." ¶ 9.4.

indicating that the initial mailing was not delivered. ¶ 4.2(a). The Claims Administrator will establish a dedicated settlement website that includes the Settlement Agreement as well as other important Litigation documents. ¶ 4.2(b). A toll-free number with interactive voice response and FAQs shall also be made available to address Settlement Class Members' inquiries. ¶ 4.2(b). Prior to the Final Approval Hearing, Counsel for the Settling Parties will file with the Court an appropriate declaration from the Claims Administrator demonstrating compliance with the Court-approved Notice Program. ¶ 4.5.

The Settlement Agreement provides for opt-out procedures. *See* ¶ 5. Each Settlement Class Member wishing to exclude themselves from the Settlement Class must individually sign and timely mail a written Request for Exclusion to the address designated by the Claims Administrator. ¶ 5.1. The Settlement Agreement also provides for objection procedures. *See* ¶ 6. Each Settlement Class Member who does not file a timely Request for Exclusion may file with the Court a notice of intent to object to the Class Settlement Agreement. ¶ 6.1. The Notice shall advise Settlement Class Members of the deadline for submission of any objections. ¶ 6.2.

The Settlement Agreement requires the Claims Administrator to administer and calculate the Settlement Claims submitted by Settlement Class Members. ¶ 7.1. All Settlement Claims must be submitted on or before the Claims Deadline. *Id*. The Claims Administrator will determine whether: (1) the claimant is a Settlement Class Member and, if applicable, and California Settlement Subclass Member; and (2) that the claimant has provided all information required to complete the Claim Form by the Claims Deadline. ¶ 7.2. If, after review of the Settlement Claim and all documentation submitted by the claimant, the Claims Administrator determines that such a Settlement Claim is valid, then the Settlement Claim shall be paid within the specified time period. ¶ 7.4.

The Claims Administrator shall agree to hold the Settlement Funds in an interest-bearing Qualified Settlement Fund account, and administer the Settlement Fund, subject to the continuing jurisdiction of the Court and from the earliest possible date, as a qualified settlement fund as defined by Treasury Regulation § 1.46B-1, *et seq.* ¶ 7.6.

The proposed Notice Program complies with Rule 23 and due process because, among other things, it informs Settlement Class Members directly of: the nature of the action and the class issues of the Litigation; the essential terms of the Settlement, including the class definitions and claims asserted; the binding effect of a judgment if the Settlement Class Member does not opt-out; the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; the process for submitting a claim; and information regarding Plaintiffs' request for Service Awards. *See* Fed. R. Civ. P. 23(c)(2)(B).

## IV.    ARGUMENT

### A.    The Court Should Preliminarily Approve the Settlement

Before the Settlement can be approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be quite expensive, so it has become customary for courts to first conduct a preliminary fairness review. *See Newberg on Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth below.

### B.    Legal Standard

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects

in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely

duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *Odonnell v. Harris County*, No. H-16-1414, 2019 U.S. Dist. LEXIS 151159, at *25-26 (S.D. Tex. Sep. 5, 2019) (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 U.S. Dist. LEXIS 17652, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

"When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). *See also In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), aff'd sub nom ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-

length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

Moreover, "[w]here, as here, the motion is for preliminary, and not final, approval, the standards are less stringent." *Hays*, 2019 WL 427331, at *8 (M.D. La. Feb. 4, 2019) (citations and internal quotation marks omitted). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* (citations omitted).

Here, the foregoing Rule 23 and *Reed* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the settlement.

**C.**      **The Proposed Settlement is Fair, Adequate, and Reasonable**

1.     <u>Representative Plaintiffs and Settlement Class Counsel Have Adequately
       Represented the Settlement Class</u>

Representative Plaintiffs and Class Counsel have adequately represented the Settlement

Class. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to

no unique defenses, and they and their counsel have vigorously prosecuted and continue to

vigorously prosecute this case on behalf of the Settlement Class. *See* Klinger Decl., ¶51. Further,

Settlement Class Counsel are experienced in the successful litigation and settlement of class action

litigation, including data privacy cases. Klinger Decl., ¶52; *In re Heartland Payment Sys., Inc.*

*Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied

where class counsel had "extensive experience representing consumers, and other plaintiff classes,

in class-action litigation," including "experience representing consumer classes in similar data-

breach cases"). Settlement Class Counsel also conducted a thorough investigation of the facts both

before and during the course of the Litigation. This investigation allowed Settlement Class Counsel

to better understand the key factual issues at the core of the Litigation in negotiating the Settlement,

*i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca*

*v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

Having completed a sufficient investigation and given the risks of no recovery at all,

Settlement Class Counsel, together with Representative Plaintiffs, have settled this Litigation on a

favorable basis to the Settlement Class without unduly prolonging it and without the expense and

risk of a trial. Accordingly, Representative Plaintiffs and Settlement Class Counsel have

adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A).

2.     <u>The Settlement was the Result of Arms-length Negotiations and Without
       Fraud or Collusion</u>

The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. As

previous stated, before filing their respective Complaints, Settlement Class Counsel investigated

the potential claims against Defendants, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers. Thus, Settlement Class Counsel's appreciation of the merits of this case prior to settlement allowed them to engage in vigorous, arms-length negotiations with CaptureRx. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The parties engaged in extensive arm's-length negotiations overseen by experienced mediator Hon. Wayne Andersen (Ret.) of JAMS. And those negotiations included plaintiffs in other lawsuits filed in connection with the Data Incident.  In anticipation of the mediation, CaptureRx provided information to Settlement Class Counsel about the scope of the Data Incident, the number of class members, remedial efforts, and the limited resources of CaptureRx to resolve the numerous claims asserted against it. Klinger Decl., ¶42. The parties also exchanged lengthy mediation briefs in advance of the mediation. Klinger Decl., ¶43. The mediation before Judge Anderson did not result in a settlement.  However, the Parties, with Judge Andersen's assistance, continued to negotiate after the mediation, which ultimately resulted to the parties agreeing to the material terms of the Settlement. Klinger Decl., ¶44. The parties thereafter spent significant time negotiating the specific terms and language of the Settlement Agreement through numerous phone calls and email exchanges. Klinger Decl., ¶45.

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein*, 705 F. Supp. 2d at 651 (quoting *Liger v. New Orleans Hornets NBA Ltd. P'ship*, Civ. A. No. 05-1969, 2009 U.S. Dist. LEXIS 85733, 2009 WL

2856246, at *3 (E.D. La. Aug. 28, 2009)). Here, not only is the Settlement the result of arm's-length negotiations as discussed above, but the matter of attorneys' fees was not discussed until after the class benefits were reached. Klinger Decl., ¶50; thus, there is no threat of fraud or collusion affecting the fairness of the settlement negotiations. *See In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1127 (W.D. La. 1997) ("Further, testimony was presented that the matter of attorneys' fees was not negotiated in conjunction with the settlement agreements but left for separate determination by the Court.")).

Given the arm's-length negotiations that resulted in the proposed Settlement and that there is no evidence of fraud or collusion, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2)(B) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).  Although this case was settled only about six months after this Court ordered a consolidated complaint filed (ECF No. 13), and before dispositive motions, Defendants repeatedly denied their liability and planned to file motions to dismiss.

By negotiating a Settlement at this early stage of the litigation, the parties have ensured that Settlement Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of

their claims, Representative Plaintiffs and Settlement Class Counsel are also pragmatic and recognize the risks inherent in litigation of a complex Data Incident case. *See* Klinger Decl., ¶22.

The risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Klinger Decl., ¶23. Should the case proceed in litigation, Plaintiffs' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. Plaintiffs also face the risk that class certification could be denied or that key expert testimony could be excluded. *Id.* Defendants also contend Plaintiffs' damages models would be subject to challenge, as Defendants dispute whether Plaintiffs suffered any cognizable damages and whether any such damages are measurable on a classwide basis through a viable, common methodology. And then there are the claims against the non-CaptureRx defendants. Those defendants contend Plaintiffs would need to prove each is liable based on their decision to retain CaptureRx's services. While Plaintiffs disagree with Defendants' contentions, they recognize each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery for the Class. *Id.* And even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  It is also possible—in fact, likely—any non-negotiated outcome as to CaptureRx might never be recovered by Plaintiffs due to collectability issues.  *See* **Exhibit 3**.

In contrast, the Settlement provides immediate and substantial benefits to approximately 2,420,141 Settlement Class Members—similar to the relief and benefits obtained in other data breach class actions—and on a much quicker timeline. For example, a recent proposed settlement in a data breach class action involving more than 3 million people settled for only $2.3 million. *See Kostka v. Dickey's Barbeque Restaurants, Inc*., Case No. 20-cv-3424, Dkt. 62 (N.D. Tex.); *see also, e.g., Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (proposed settlement of

$8.1 million for 9.2 million class members who had their Social Security Numbers compromised); Final Approval Order, *In re Banner Health Data Breach Litigation*, No. 2:16-cv-02696-PHX, ECF No. 198 (D. Az.) (up to $6 million claims-made settlement after 3 years of litigation where breach compromised names, Social Security numbers, and PHI of approximately 2.9 million class members).

This case is settling in its early stages; if the Settlement is not approved, the parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things. Klinger Decl., ¶38. That process would likely take years to resolve and involve expensive expert discovery. Yet there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Settlement Class Members. *Id.* Instead, there would be multiple inflection points at which the Settlement Class's claims could be narrowed or dismissed. Moreover, the parties would bear the cost of this litigation if it continues. An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Settlement Class. In short, "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. Thus, the Settlement should be preliminarily approved under Rule 23(e)(2)(C)(i) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

### 4.      The State of Litigation and the Available Discovery

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be

available to show the settlement may be approved even when little or no formal discovery has been

completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D.

433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available

to all parties." *DeHoyos*, 240 F.R.D. at 292.

Here, prior to mediation, CaptureRx shared with Settlement Class Counsel information

about the scope of the Data Incident, the number of class members, remedial efforts, and the

limited funds it has to resolve many claims asserted against it. Klinger Decl., ¶42. Drawing on

their previous experience in similar data-breach class action litigation, Settlement Class Counsel

were able to determine the Settlement's adequacy in relation to the probability of success on the

merits were this litigation to continue. Klinger Decl., ¶46. Because the parties "possess ample

information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369,

this factor also favors preliminary approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

> 5.   The Settlement Terms Represent a Highly Favorable Compromise that
>      Appropriately Balances the Merits of Plaintiffs' Claims and the
>      Likelihood of Success with the Attendant Risks

When evaluating a proposed class action settlement, "the most important factor is the

[fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d

1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the

rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240

F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time,

a district court  "must not try the case in the settlement hearings because the very purpose of the

compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal

quotation marks and alteration omitted). This factor favors approval of the settlement when the

class's likelihood of success on the merits is questionable. *See In re Corrugated Container*

*Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this

factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *DeHoyos*, 240 F.R.D. at 290 ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."); *Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both of these factors likewise weigh in favor of preliminary approval.

First, the terms of the Settlement approximate the rewards the Class likely would have received following a successful trial. Klinger Decl., ¶48. As described above, each Settlement Class Member who files a valid claim and attests that he or she was impacted by the Data Incident is eligible to receive $25.00, subject to a *pro rata* increase or reduction. *See* Section III(B), *supra*. California Settlement Subclass Members who file a valid claim will be eligible for an additional benefit of $75.00, subject to a potential *pro rata* increase or reduction. *Id.* These benefits represent a highly favorable compromise that balances the merits of Plaintiffs' claims and the likelihood of succeeding at trial and on appeal with the attendant risks. Klinger Decl., ¶49. Though Representative Plaintiffs and Settlement Class Counsel are confident that they ultimately would have been able to prove their claims, they also understand that Plaintiffs' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. *Id.* Plaintiffs also face the risk that class certification could be denied. *Id.* Further, even if this Court had certified a class and the litigation was resolved in Plaintiffs' favor, the amount Plaintiffs and

the Class would have been awarded in damages, if any, is uncertain, as are the sources available to fund those allowed claims given CaptureRx's extremely limited resources. *See* Settlement Agreement at 3. Indeed, CaptureRx faces potential insolvency if this litigation moves forward. *Id.* There is limited insurance coverage, all of which is being used to fund a portion of the Settlement. *Id.* The remaining monies used to fund the Settlement are being borne personally by the owners of CaptureRx. *Id.*

The inherent uncertainty in litigation—even where, as here, Representative Plaintiffs are confident in their future success—presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. Klinger Decl., ¶22. Finally, even assuming success at trial and CaptureRx's ability to pay a judgment in favor of Plaintiffs, the case would likely continue with lengthy appeals. *Id.* The proposed Settlement avoids these uncertainties and provides the Settlement Class with immediate, meaningful, and certain monetary and injunctive relief. *Id.* Under the circumstances, Representative Plaintiffs and Settlement Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. *Id.*

Accordingly, the Settlement should be preliminarily approved under Rule 23(e)(2)(C)(i) and the fourth and fifth *Reed* factors. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

6.   Settlement Class Counsel and Representative Plaintiffs Believe that the Settlement is in the Settlement Class's Best Interests

Finally, all Representative Plaintiffs and Settlement Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Settlement Class Members, which is an important consideration in any class settlement analysis. Klinger Decl., ¶24. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast*

26

*Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). Here, Settlement Class Counsel are collectively highly experienced in class action litigation and were well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Klinger Decl., ¶52. They have collectively recovered hundreds of millions of dollars for class members in other litigation, including data breach cases. *See, e.g., Carrera Aguallo v. Kemper Corp.,* Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021), Dkt. No. 43 (preliminarily approving settlement valued at more than $17 million in data breach class action involving 6 million class members); *In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PII of 28.5 million military veterans and active duty personnel; $20 million settlement fund); *In re Google Buzz Priv. Litig.,* No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising from unauthorized disclosure fr personal information). Accordingly, the sixth *Reed* factor further supports approval of the proposed Settlement. *See Reed*, 703 F.2d at 172; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

       7.   <u>The Settlement Treats Settlement Class Members Equitably Relative to Each Other</u>

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct mail notice of the Settlement. *See* Section III(E), *supra*. It also informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *Id.* Every

Settlement Class Member who submits a valid claim and who attest that he or she was impacted by the Data Incident is eligible to receive $25.00, and each California Settlement Subclass Member is also eligible or an additional benefit of $75.00. *Id.* All Settlement payments are subject to a potential *pro rata* increase or reduction. *Id.* Thus, the Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

* * *

Each factor identified under Rule 23(e)(2) and as required by the Fifth Circuit in *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $4,750,000.00 recovery is an excellent result. It could not have been achieved without full commitment by Representative Plaintiffs and Settlement Class Counsel. Representative Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement is both fair and adequate and that it meets each of the Rule 23(e)(2) and *Reed* factors such that notice of the Settlement should be sent to the Settlement Class. *See Odonnell*, 2019 U.S. Dist. LEXIS 151159, at *38-39 (S.D. Tex. Sep. 5, 2019) (preliminarily finding the proposed consent decree and settlement agreement terms were fair, reasonable and adequate under Rule 23(e) and the governing case all where "[a]ll of the Rule 23(e)(2) and *Reed* factors weigh[ed] in favor of preliminarily approving the proposed consent decree and settlement agreement.").

### D. The Court Should Preliminarily Certify the Settlement Class

#### 1. The Settlement Class Meets the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

Before assessing the parties' Settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632.

28

The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here.

(a)    Numerosity

Rule 23 first requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). That said, a showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992)); *see In re Talbert,* 347 B.R. 804, 808-809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members).

Here, the numerosity requirement is easily met. The Settlement Class consists of approximately 2,420,141 members. *See* Compl. ¶ 88 & n.2.

(b)    Commonality

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes, et al,* 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (citing *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012)). "These 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.* Regardless, "a *single* common question will do." *Id.* (citing *Dukes*, 564 U.S. at 359) (emphasis added) (alterations in original).

29

The commonality requirement is easily satisfied here. All Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' PII and PHI. Thus, common questions include, *inter alia*, whether Defendants engaged in the wrongful conduct alleged; whether Settlement Class Members' PII and PHI was compromised in the Data Incident; whether Defendants owed a duty to Plaintiffs and Settlement Class Members; whether Defendants breached their duties; whether Defendants unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Data Incident; and whether Defendants committed the common law and statutory violations alleged in the Consolidated Class Action Complaint. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

### (c)   Typicality

Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 314 (5th Cir.2007). Here, Plaintiffs' claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Plaintiffs had PII that was stored on CaptureRx's systems and was compromised in the Data Incident, and so they suffered the same injury, were harmed by the same inadequate data security, and seek to assert the same underlying claims as the rest of the Settlement Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential

characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

>    (d)    *Adequacy of Representation*

The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d 790, 813 n.99 (5th Cir. 2014) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

Plaintiffs adequately represent the Settlement Class, as they have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. *See* Klinger Decl., ¶51. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See id.*; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

>    2.    The Settlement Class Meets the Demands of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at

614. Plaintiffs seek class certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

<div align="center">

(a)    *Common Legal and Factual Questions Predominate in This Litigation*

</div>

Common legal and factual questions predominate in this Litigation relating to the Data Incident and related allegations. The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to classwide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it does require that common questions predominate over any questions affecting only individual class members. *Id.* "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether CaptureRx owed a duty to Plaintiffs and Settlement Class Members, whether CaptureRx breached its duty, and whether CaptureRx unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Data Incident. These issues are subject to "classwide proof" and "outweigh those issues that are subject to individualized proof." "When one or more of the central issues in the action are common to the class and can be said to

<div align="center">32</div>

predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citations and quotations omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases). The Settlement Class and California Settlement Subclass meet the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits.

### (b)   *A Class Action is the Superior Means to Adjudicate Plaintiffs' Claims*

The Court should find that the class action is the superior means of adjudication under Rule 23(b)(3). Each of the Rule 23(b)(3) factors, below, weigh in favor of finding superiority:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Members' claim is relatively so much smaller than the cost it would even take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. It is desirable to concentrate the litigation of the claims into

33

the present forum in view of the scale of the class under Rule 23(b)(3)(C). With approximately 2.4 million class members, a class action would be superior over individual adjudication. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999) (comparing a class that would consist of hundreds, instead of millions, of members). As detailed above, this Litigation includes other consolidated actions initiated by other Settlement Class Members, which weighs in favor of class treatment under Rule 23(b)(3)(B).

<div align="center">3.    The Court Should Approve the Proposed Notice Program</div>

Rule 23(e) requires that the Court "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen*, 417 U.S. at 173. The proposed Notice Program meets these requirements.

Here, the proposed Notice Program includes that CaptureRx will provide the Claims Administrator with a list of Settlement Class Members in such format as requested by the Claims Administrator  which will include, to the extent available, the name and physical mailing address of each Settlement Class Member, and if known, their respective email addresses. ¶ 4.1. Within fourteen (14) days after receiving the Settlement Class list from CaptureRx, the Claims Administrator will send the Summary Notice on a postcard via First Class U.S. Mail, postage pre-paid, to Settlement Class Members. ¶ 4.2(a). Within twenty (20) days after sending such mail, the Claims Administrator will undertake reasonable efforts to confirm the address, and to resend notice, for any Settlement Class Members for which the Claims Administrator receives returned mail from the U.S. Postal Service indicating that the initial mailing was not delivered. ¶ 4.2(a). Within seven (7) days after receiving the Settlement Class list from CaptureRx, the Claims

<div align="center">34</div>

Administrator will establish a dedicated settlement website that includes the Settlement Agreement, the Long Notice, and the Claim Form approved by the Court. ¶ 4.2(b). The Claims Administrator shall maintain and update the website throughout the Claims Period. ¶ 4.2(b). The Claims Administrator will also post on the settlement website copies of the motion for final approval of the Settlement and the motion for an Attorneys' Fees and Expenses Award and a Service Award. ¶ 4.2(b). A toll-free number with interactive voice response and FAQs shall also be made available to address Settlement Class Members' inquiries. ¶ 4.2(b).

Substantively, Rule 23(c)(2)(B) requires, and the Notice Program provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019). Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id.* (citations and quotation marks omitted).

The Notice defines the Settlement Class and California Settlement Subclass; explains all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and describes in detail the monetary relief provided by the Settlement Agreement, including the procedures for allocating and distributing the Settlement Fund amongst the Settlement Class Members and California Settlement

Subclass Members, Plaintiffs, Settlement Class Counsel, and the Settlement Administrator. The Notice will also indicate the time and place of the Final Approval Hearing, and explain the methods for objecting to, or opting out of, the Settlement. It details the provisions for payment of Attorneys' Fees, Costs and Service Awards, and they provide contact information for Settlement Class Counsel. In light of the foregoing, the Notice Program has been designed to give the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court:

(a) Stay all proceedings in the Litigation other than those related to approval of the Settlement Agreement;

(b) Stay and/or enjoin, pending Final Approval of the Settlement Agreement, any actions brought by Settlement Class Members concerning the Released Claims;

(c) Preliminarily certify the Settlement Class and the California Settlement Subclass for settlement purposes only;

(d) Preliminarily approve the terms of the Settlement Agreement as fair, adequate, and reasonable;

(e) Appoint Representative Plaintiffs as the Settlement Class representatives for settlement purposes only;

(f) Appoint Settlement Class Counsel as counsel for the Settlement Class for settlement purposes only;

(g) Approve the Notice Program, as set forth in the Settlement Agreement (¶ 4) and set the dates for the Claims Deadline, Opt-Out Deadline, and Objection Deadline;

(h) Approve the form and contents of a long form notice ("Long Notice") to be posted on the settlement website substantially similar to the one attached to the Settlement Agreement as Exhibit B, and a Summary Notice to be sent via First Class Mail to Settlement Class Members ("Summary Notice"), substantially similar to the one attached to the Settlement Agreement as Exhibit C, which together shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the Settlement set forth in the Settlement Agreement, instructions for how to object to or submit a Request for Exclusion from the Settlement, the process and instructions for filing a Claim Form, and the date, time and place of the Final Approval Hearing;

(i) Approve a Claim Form substantially similar to that attached to the Settlement Agreement as Exhibit A;

(j) Appoint a Claims Administrator; and

(k) Schedule the Final Approval Hearing.


Date: February 11, 2022

<div style="margin-left:40%">

*/s/ Gary M. Klinger*

Gary M. Klinger (*Pro Hac Vice*)
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (202) 429-2290
Fax: (202) 429-2294
gklinger@masonllp.com

M. ANDERSON BERRY (262879)
(*Pro Hac Vice*)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825

</div>

Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com

*Interim Co-Lead Counsel*

Joe Kendall
KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: 214-744-3000
Facsimile: 214-744-3015
jkendall@kendalllawgroup.com

*Local Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2022, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the Western District of Texas via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.


Date: February 11, 2022                           */s/ Gary M. Klinger*

39